Exhibit A

to

Notice of Removal

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                   SUPERIOR COURT DEPARTMENT
                                               OF THE TRIAL COURT

```
                                    )
SMITH, COSTELLO & CRAWFORD          )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    C.A. No.
                                    )
BRAYTON POINT LLC                   )
                                    )
            Defendant.              )
                                    )
```

RECEIVED
AUG – 7, 2019
SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## COMPLAINT AND JURY DEMAND

### i.  Introduction

1.      Plaintiff Smith, Costello & Crawford ("SCC") brings this action against Defendant Brayton Point LLC ("BP LLC") to recover unpaid fees and commissions owed to it pursuant to a written Retainer Letter agreement dated February 5, 2018, and amended on February 7, 2018 ("the Agreement").  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

2.      Pursuant to the Agreement, SCC agreed to assist BP LLC with the redevelopment of certain property located in Somerset, Massachusetts towards its lease or sale. SCC fully performed under the Agreement by engaging in, without limitation, discussions with potential developers, evaluating multiple development options, marketing the property, monitoring Massachusetts legislation, and soliciting and negotiating offers, all in accordance with the parties' defined responsibilities under the Agreement. For its part, BP LLC was contractually obligated to pay SCC a monthly fee of $5,000. BP LLC negotiated the monthly fee from

$10,000 down to $5,000 by agreeing to pay a commission in the form of "one percent (1%) of sales or leases or other revenues received on the property up to a cap of $300,000." See, Exhibit A at page 1.

3.      As the project finally reached the stage where third parties were in the process of advancing proposals to invest in or lease the property, BP LLC unlawfully cut SCC out of the process and refused to honor its contractual obligation to pay SCC to pay under the Agreement both with regard to the monthly fees owed and the agreed upon commission.

4.      By and through this action, SCC seeks damages, including multiple damages and attorneys' fees under General Laws Chapter 93A, sections 2 and 11, arising from BP LLC's bad faith breach of the Agreement.  SCC also seeks relief in the form of an accounting of all "revenues received on the property" which to date BP LLC has refused to disclose.

## ii.  Parties

5.      SCC is a regulatory and legislative lobbying partnership which provides consultation and representation services to its clients and has a principal place of business located at 50 Congress Street, Suite 420, Boston, Massachusetts 02109.

6.      BP LLC is a foreign limited liability company organized under the laws of the state of Missouri and registered to do business in the Commonwealth of Massachusetts, with a principal place of business at 1515 Des Peres Road, Suite 300, St. Louis, Missouri 63131.  At all relevant times, BP LLC conducted business in Massachusetts with regard to the events from which this matter arises.

### iii.  Jurisdiction and Venue

7.       Jurisdiction and venue are proper in this Court where BP LLC transacts business in the Commonwealth, the services provided by SCC to BP LLC occurred in the Commonwealth and SCC's usual and principal place of business is located in Suffolk County, Massachusetts.

### iv.  Facts

8.       On or about February 5, 2018, SCC and BP LLC entered into a Retainer Letter. The parties initially agreed that under the Retainer Letter BP LLC would pay a monthly fee to SCC in the amount of $10,000.  At BP LLC's insistence, however, SCC agreed to reduce its monthly fee to $5,000 in exchange for a commission of one percent (1%) on the revenue received from the property with a cap of $300,000.  This was a substantial concession for SCC. BP LLC's obligation to pay the commission was tied directly to SCC's agreement to reduce its monthly fee and became due and payable upon the commencement of revenues being received on the property.

9.       From the commencement of the Agreement, SCC carried out all of its obligations under the Agreement in an effective or timely manner.  At no time did BP LLC contend otherwise.

10.       In or about June 2018, approximately three (3) months into the Agreement and after SCC had made substantial efforts in connection with the redevelopment of Brayton Point, BP LLC unilaterally announced that it was "terminating" the Agreement.

11.       BP LLC's purported termination letter indicated that they did not foresee any further need for the services described in the Agreement.

12.    However, almost immediately after sending its purported termination letter, BP LLC reversed course and informed SCC that BP LLC was amenable to continuing the Agreement provided that SCC acknowledge BP LLC's future ability to terminate the Agreement within 30 days' notice and that SCC provide it with quarterly status reports about actions undertaken on their behalf related to the subject property. BP LLC's efforts to renegotiate the Agreement confirmed that it recognized the Agreement remained in effect and that it had no right to terminate it.

13.    Without waiving in any manner the enforceability of the Agreement, SCC indicated a willingness to amend the arrangement by going back to the originally proposed monthly fee of $10,000 per month. BP LLC never accepted SCC's offer of an amended arrangement and never waived its rights under the Agreement.

14.    Instead, BP LLC continued to ask SCC to perform services under the Agreement.

15.    At all relevant times, SCC continued performing its duties under the Agreement.

16.    At all relevant times, BP LLC's was aware of SCC's continued work.  For example, without limitation, SCC continued to work diligently on the Brayton Point project providing introductions to BP LLC's members to individuals in the offshore wind industry, a potential gas power plant developer and a solar developer.  SCC also had a number of meetings with local and state officials regarding the development of the Brayton Point property.

17.    On or about July 30, 2018, SCC successfully lobbied for a $15 million appropriation, through the State's Economic Development Bill, for Brayton Point that provided, in relevant part, "that not less than $15 million shall be expended for dredging in the waterways and the construction, rehabilitation, and repair of on-shore facilities located at Brayton Point, in

the town of Somerset, to support the growth and expansion of the off-shore wind-driven electricity generating projects."

18.     At all relevant times, SCC worked alongside Steve Collins, an agent on behalf of BP LLC, who was fully aware of SCC's efforts in relation to the Brayton Point redevelopment process.

19.     BP LLC failed and refused to pay SCC under the Agreement for services provided from May 2018 to November 2018.

20.     BP LLC has contended, in bad faith, that it terminated the parties' Agreement on May 1, 2018. BP LLC has advanced this fiction despite the facts that it had no right to do so, that it had no right to avoid paying the revenue sharing commission to which the parties agreed, at its request, and that SCC provided more than five (5) months of services under the Agreement at BP LLC's request after May 1, 2018.

21.     Upon information and belief, BP LLC has received or will soon be receiving revenues from the Brayton Point property.

22.     BP LLC has refused to provide SCC with any information about any revenue-producing agreement(s) it has entered into with third-parties in relation to the Brayton Point property.

23.     BP LLC has failed to pay SCC its commission earned under the Agreement for its share of the revenues produced.

24.     SCC has suffered significant damages as a result of BP LLC's failure to comply with the terms of the Agreement.

## COUNT I
### (Breach of Contract)

25.    SCC incorporates herein by reference the allegations set forth above in their entirety.

26.    BP LLC has breached the Agreement by failing to comply with its terms.

27.    SCC has suffered damages as a consequence of BP LLC's breach of the Agreement.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

28.    SCC incorporates herein by reference the allegations set forth above in their entirety.

29.    BP LLC has interfered with SCC's ability to perform under the Agreement and has acted to deprive it of its full ability to enjoy the benefits of the Agreement.

30.    SCC has suffered damages as a consequence of the BP LLC's breach of the implied covenant of good faith and fair dealing existing in the Agreement.

## COUNT III
### (Accounting)

31.    SCC incorporates herein by reference the allegations set forth above in their entirety.

32.    SCC seeks and is entitled to a full accounting of all monies related to the Brayton Point property to ensure that its share of revenues on the property is received.

33.    BP LLC has failed to provide an account of any agreements with third-parties under which revenue will be received on the Brayton Point property and failed to respond in any manner to SCC's timely request for information concerning all revenue generating agreements on the Brayton Point property.

6

34. SCC requests this Court order BP LLC to provide a detailed and complete accounting of all monies received or to be received in relation to the Brayton Point property for the period beginning in February 2018 to present date.

## COUNT IV
### (Violation of G.L. c. 93A, sec. 2 and 11)

35. SCC incorporates herein by reference the allegations set forth above in their entirety.

36. SCC and BP LLC were, at all relevant times, in trade or commerce with each other in Massachusetts with respect to the Agreement.

37. BP LLC breached the Agreement and refused to provide information about any revenue producing agreement(s) in a bad faith and unfair and deceptive manner.

38. SCC has been damaged by BP LLP's unfair and deceptive acts and practices. BP LLC is liable to SCC for multiple damages and attorneys' fees.

WHEREFORE, SCC demands that judgment be entered in its favor on all counts, including all such accompanying relief as the Court deems appropriate, including but not limited to:

i. With respect to Counts I and II, after trial, that the Court find and adjudge that BP LLC has breached its contractual duty to SCC and order BP LLC to pay SCC the damages sustained including but not limited to unpaid services totaling $35,000 and the share of revenue it is entitled to under the Agreement with BP LLC, together with interest, costs, and attorneys' fees;

ii. With respect to Count III, after trial, that the Court double or treble the amount of the damages awarded and award attorneys' fees under Chapter 93A;

iii.  With respect to Count IV, after trial, that the Court order BP LLC to provide a full

and detailed accounting to SCC of all monies for revenue received or to be

received in relation to the Brayton Point property; and

iv.  Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

SCC hereby demands a trial by jury on all claims so triable.

Respectfully Submitted,

SMITH, COSTELLO & CRAWFORD
By its attorneys,

Howard M. Cooper (BBO# 543842)
hcooper@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date: August 7, 2019

# Exhibit A

PO #7102
$5,000 monthly

February 5, 2018

Brayton Point, LLC
1650 Des Peres Road, Suite 303
Saint Louis, MO  63131

RE:  Retainer Letter

1.      Scope of Representation.

The purpose of this letter is to confirm the terms and conditions under which Smith, Costello & Crawford (the "Firm," "we," "us," and "our") will provide strategic consultation services and government affairs representation to Brayton Point, LLC (BP LLC) ("the client"). The firm agrees to work to represent BP LLC to provide such services as necessary as necessary to insure the successful redevelopment and ultimately the resale or lease of Brayton Point. Our services and representation may include but shall not be limited to:  (1) making introductions to and cultivating relationship building and management of key Massachusetts policy and legislative leaders; (2) providing strategic consultation services supporting the Client's business development; (3) promoting the Client's brand in providing high-value services to the Commonwealth, including strengthening and leveraging key relationships with the Commonwealth's business community, with a particular focus on businesses which may desire to locate in the South Coast area, including businesses focused on energy, storage and offshore wind; (4) participating in and representing the Client at meetings and hearings; (5) monitoring and reviewing Massachusetts legislation, regulation, policies, and other actions proposed by governmental bodies for potential impact on the Client's interests in Massachusetts and advising the Client regarding the same; (7) advising and assisting the Client to pass or defeat regulation, legislation, or other proposed action by governmental bodies; and, (8) carrying out other activities related to advancing the interests of the Client in Massachusetts.

2.      Staffing.

Jim Smith, Mike Costello and Carlo Basile will be primarily responsible for this engagement, although other members of the firm may become involved.

3.      Fees and Term.

Our fees will be payable in advance monthly, on the first day of each month, at the rate of Ten ~~Five~~
Thousand Dollars ($~~10~~,000.00) per month, beginning at February 1, 2018.  *Additionally,*
    5,000
*Firm will receive one percent (1%) of sales or leases*
*or other revenues received on the Property up to a*
*cap of $300,000.*

*[signature] 2-7-18*          *[signature] 2-7-18*

4.   **Costs and Disbursements.**

It is anticipated that there will be no travel costs or extraordinary disbursements costs in this engagement. It is policy of the Firm not to charge its clients separately for postage, telephone calls, facsimile transmissions, computerized research, and staff overtime. It is also the Firm's policy not to bill its clients separately for ordinary photocopying expenses. However, any registration or lobbying fees that may be required for this engagement will be billed to the Client at the Firm's actual cost and any travel required will be billed to the Client, but only if said travel is authorized in advance by the Client.

5.   **Independent Activities.**

The Client understands and acknowledges that the Firm has preexisting and executed contracts with other entities. Nothing in this Agreement shall preclude the Firm from pursuing other business activities, so long as such activities do not 1) conflict or interfere with its obligation hereunder; or, 2) violate any terms of this Agreement. Nothing in this Agreement shall grant the Client or the Firm any exclusive relationship.

6.   **E-mail Communication.**

During the course of representing you, we may from time to time, when appropriate, communicate with you by e-mail. We advise you that: (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from us to you or vice versa (3) a person not participating in our communication may intercept our communications by improperly accessing your computer or our computers or even another computer unconnected to either of us through which email passes. Your execution of this letter below will reflect your consent to receiving communications from us via e-mail. If, at some time during our representation, you change your mind and would prefer that we not communicate via e-mail, please let us know immediately.

7.   **Understandings.**

You understand and acknowledge that we cannot make and have not made any guarantees regarding the outcome of any matter.

**8.    Disclosure.**

The Client hereby consents to the Firm's public disclosure of the fact that s/he is a Client of the Firm. The Firm will maintain the confidentiality of all other information concerning the Client.

If the foregoing correctly reflects your understanding of the terms and conditions of our representation, please indicate your consent to agreements and disclosures in this letter by executing the enclosed copy of this letter in the space provided below and return it to our office. A facsimile copy shall be deemed to be acceptable as an original and each party may sign a separate counterpart of this letter. We are pleased to have this opportunity to be of service and to work with you.

Smith, Costello & Crawford

James E. Smith, Partner

**AGREEMENT AND ACCEPTANCE**

The undersigned hereby acknowledges and agrees that he has reviewed and understands the terms of this letter, agrees to be bound by them, and represents that he has authority to execute this agreement and acceptance on behalf of Brayton Point LLC.

By:

Michael J. Roberts

Its:   Managing Member

Exhibit B

to

Notice of Removal

 CT Corporation

**Service of Process Transmittal**
08/12/2019
CT Log Number 536040538

TO:     Becky Lydon
        Commercial Development Company, Inc.
        1515 Des Peres Rd Ste 300
        Saint Louis, MO 63131-1846

RE:     **Process Served in Massachusetts**

FOR:    Brayton Point LLC  (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SMITH, COSTELLO & CRAWFORD, PLTF. vs. BRAYTON POINT LLC, DFT. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Suffolk County Superior Court, MA<br>Case # 1984CV02517D |
| **NATURE OF ACTION:** | Complaint for Breach of Contract |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/12/2019 at 13:32 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Howard M. Cooper<br>SMITH, COSTELLO & CRAWFORD<br>One Federal Street<br>27th Floor<br>Boston, MA 02110<br>617-720-2626 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780135797784 |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 617-757-6404 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **Todd&Weld**LLP

Howard M. Cooper
E-mail: hcooper@toddweld.com

August 9, 2019

*Via Hand Delivery and*
*Certified Mail / Return Receipt Requested*
*No.: 7011 0110 0001 3653 0144*

CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

      Re:   *Smith, Costello & Crawford v. Brayton Point LLC*
             **Suffolk Superior Court C.A. No.:  1984-CV-02517 D**

Dear Sir/Madam:

      As agent for Brayton Point LLC, enclosed please find the following:

1.     Summons;

2.     Complaint and Jury Demand;

3.     Civil Action Cover Sheet;

4.     Motion for Special Process Server; and

5.     Civil Tracking Order.

Thank you for your attention to this matter.

               Very truly yours,

               Howard M. Cooper

HMC/dc
Enclosures

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.  1984-CV-02517 D

Smith, Costello & Crawford, PLAINTIFF(S),

v.

Brayton Point LLO., DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO CT Corporation System, Resident Agent for Brayton Point LLO:, (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.    **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2.    **How to Respond.**  To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

      a.  Filing your signed original response with the Clerk's Office for Civil Business, Suffolk Superior Court, 3 Pemberton Sq. 12th Floor Boston, MA 02108, (address), by mail or in person, **AND**

      b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Howard M. Cooper, Todd & Weld, One Federall Street, 27th Floor, Boston, MA 02100.

3.    **What to include in your response.**  An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____         Signature: _____

N.B.     TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT DEPARTMENT
                                               OF THE TRIAL COURT

```
                              )
SMITH, COSTELLO & CRAWFORD    )
                              )
          Plaintiff,          )
                              )
v.                            )    C.A. No.
                              )
BRAYTON POINT LLC             )
                              )
          Defendant.          )
                              )
```

RECEIVED

AUG – 7, 2019

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

### COMPLAINT AND JURY DEMAND

#### i.  Introduction

1.     Plaintiff Smith, Costello & Crawford ("SCC") brings this action against Defendant Brayton Point LLC ("BP LLC") to recover unpaid fees and commissions owed to it pursuant to a written Retainer Letter agreement dated February 5, 2018, and amended on February 7, 2018 ("the Agreement").  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

2.     Pursuant to the Agreement, SCC agreed to assist BP LLC with the redevelopment of certain property located in Somerset, Massachusetts towards its lease or sale. SCC fully performed under the Agreement by engaging in, without limitation, discussions with potential developers, evaluating multiple development options, marketing the property, monitoring Massachusetts legislation, and soliciting and negotiating offers, all in accordance with the parties' defined responsibilities under the Agreement.  For its part, BP LLC was contractually obligated to pay SCC a monthly fee of $5,000.  BP LLC negotiated the monthly fee from

$10,000 down to $5,000 by agreeing to pay a commission in the form of "one percent (1%) of sales or leases or other revenues received on the property up to a cap of $300,000." See, Exhibit A at page 1.

3.     As the project finally reached the stage where third parties were in the process of advancing proposals to invest in or lease the property, BP LLC unlawfully cut SCC out of the process and refused to honor its contractual obligation to pay SCC to pay under the Agreement both with regard to the monthly fees owed and the agreed upon commission.

4.     By and through this action, SCC seeks damages, including multiple damages and attorneys' fees under General Laws Chapter 93A, sections 2 and 11, arising from BP LLC's bad faith breach of the Agreement.  SCC also seeks relief in the form of an accounting of all "revenues received on the property" which to date BP LLC has refused to disclose.

## ii.  Parties

5.     SCC is a regulatory and legislative lobbying partnership which provides consultation and representation services to its clients and has a principal place of business located at 50 Congress Street, Suite 420, Boston, Massachusetts 02109.

6.     BP LLC is a foreign limited liability company organized under the laws of the state of Missouri and registered to do business in the Commonwealth of Massachusetts, with a principal place of business at 1515 Des Peres Road, Suite 300, St. Louis, Missouri 63131.  At all relevant times, BP LLC conducted business in Massachusetts with regard to the events from which this matter arises.

2

### iii. Jurisdiction and Venue

7.        Jurisdiction and venue are proper in this Court where BP LLC transacts business in the Commonwealth, the services provided by SCC to BP LLC occurred in the Commonwealth and SCC's usual and principal place of business is located in Suffolk County, Massachusetts.

### iv. Facts

8.        On or about February 5, 2018, SCC and BP LLC entered into a Retainer Letter. The parties initially agreed that under the Retainer Letter BP LLC would pay a monthly fee to SCC in the amount of $10,000. At BP LLC's insistence, however, SCC agreed to reduce its monthly fee to $5,000 in exchange for a commission of one percent (1%) on the revenue received from the property with a cap of $300,000. This was a substantial concession for SCC. BP LLC's obligation to pay the commission was tied directly to SCC's agreement to reduce its monthly fee and became due and payable upon the commencement of revenues being received on the property.

9.        From the commencement of the Agreement, SCC carried out all of its obligations under the Agreement in an effective or timely manner.  At no time did BP LLC contend otherwise.

10.        In or about June 2018, approximately three (3) months into the Agreement and after SCC had made substantial efforts in connection with the redevelopment of Brayton Point, BP LLC unilaterally announced that it was "terminating" the Agreement.

11.        BP LLC's purported termination letter indicated that they did not foresee any further need for the services described in the Agreement.

12.     However, almost immediately after sending its purported termination letter, BP LLC reversed course and informed SCC that BP LLC was amenable to continuing the Agreement provided that SCC acknowledge BP LLC's future ability to terminate the Agreement within 30 days' notice and that SCC provide it with quarterly status reports about actions undertaken on their behalf related to the subject property. BP LLC's efforts to renegotiate the Agreement confirmed that it recognized the Agreement remained in effect and that it had no right to terminate it.

13.     Without waiving in any manner the enforceability of the Agreement, SCC indicated a willingness to amend the arrangement by going back to the originally proposed monthly fee of $10,000 per month. BP LLC never accepted SCC's offer of an amended arrangement and never waived its rights under the Agreement.

14.     Instead, BP LLC continued to ask SCC to perform services under the Agreement.

15.     At all relevant times, SCC continued performing its duties under the Agreement.

16.     At all relevant times, BP LLC's was aware of SCC's continued work. For example, without limitation, SCC continued to work diligently on the Brayton Point project providing introductions to BP LLC's members to individuals in the offshore wind industry, a potential gas power plant developer and a solar developer. SCC also had a number of meetings with local and state officials regarding the development of the Brayton Point property.

17.     On or about July 30, 2018, SCC successfully lobbied for a $15 million appropriation, through the State's Economic Development Bill, for Brayton Point that provided, in relevant part, "that not less than $15 million shall be expended for dredging in the waterways and the construction, rehabilitation, and repair of on-shore facilities located at Brayton Point, in

4

the town of Somerset, to support the growth and expansion of the off-shore wind-driven

electricity generating projects."

18.     At all relevant times, SCC worked alongside Steve Collins, an agent on behalf of

BP LLC, who was fully aware of SCC's efforts in relation to the Brayton Point redevelopment

process.

19.     BP LLC failed and refused to pay SCC under the Agreement for services

provided from May 2018 to November 2018.

20.     BP LLC has contended, in bad faith, that it terminated the parties' Agreement on

May 1, 2018. BP LLC has advanced this fiction despite the facts that it had no right to do so,

that it had no right to avoid paying the revenue sharing commission to which the parties agreed,

at its request, and that SCC provided more than five (5) months of services under the Agreement

at BP LLC's request after May 1, 2018.

21.     Upon information and belief, BP LLC has received or will soon be receiving

revenues from the Brayton Point property.

22.     BP LLC has refused to provide SCC with any information about any revenue-

producing agreement(s) it has entered into with third-parties in relation to the Brayton Point

property.

23.     BP LLC has failed to pay SCC its commission earned under the Agreement for its

share of the revenues produced.

24.     SCC has suffered significant damages as a result of BP LLC's failure to comply

with the terms of the Agreement.

## COUNT I
### (Breach of Contract)

25.    SCC incorporates herein by reference the allegations set forth above in their entirety.

26.    BP LLC has breached the Agreement by failing to comply with its terms.

27.    SCC has suffered damages as a consequence of BP LLC's breach of the Agreement.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

28.    SCC incorporates herein by reference the allegations set forth above in their entirety.

29.    BP LLC has interfered with SCC's ability to perform under the Agreement and has acted to deprive it of its full ability to enjoy the benefits of the Agreement.

30.    SCC has suffered damages as a consequence of the BP LLC's breach of the implied covenant of good faith and fair dealing existing in the Agreement.

## COUNT III
### (Accounting)

31.    SCC incorporates herein by reference the allegations set forth above in their entirety.

32.    SCC seeks and is entitled to a full accounting of all monies related to the Brayton Point property to ensure that its share of revenues on the property is received.

33.    BP LLC has failed to provide an account of any agreements with third-parties under which revenue will be received on the Brayton Point property and failed to respond in any manner to SCC's timely request for information concerning all revenue generating agreements on the Brayton Point property.

6

34. SCC requests this Court order BP LLC to provide a detailed and complete accounting of all monies received or to be received in relation to the Brayton Point property for the period beginning in February 2018 to present date.

## COUNT IV
### (Violation of G.L.c. 93A, sec. 2 and 11)

35. SCC incorporates herein by reference the allegations set forth above in their entirety.

36. SCC and BP LLC were, at all relevant times, in trade or commerce with each other in Massachusetts with respect to the Agreement.

37. BP LLC breached the Agreement and refused to provide information about any revenue producing agreement(s) in a bad faith and unfair and deceptive manner.

38. SCC has been damaged by BP LLP's unfair and deceptive acts and practices. BP LLC is liable to SCC for multiple damages and attorneys' fees.

WHEREFORE, SCC demands that judgment be entered in its favor on all counts, including all such accompanying relief as the Court deems appropriate, including but not limited to:

i. With respect to Counts I and II, after trial, that the Court find and adjudge that BP LLC has breached its contractual duty to SCC and order BP LLC to pay SCC the damages sustained including but not limited to unpaid services totaling $35,000 and the share of revenue it is entitled to under the Agreement with BP LLC, together with interest, costs, and attorneys' fees;

ii. With respect to Count III, after trial, that the Court double or treble the amount of the damages awarded and award attorneys' fees under Chapter 93A;

iii. With respect to Count IV, after trial, that the Court order BP LLC to provide a full and detailed accounting to SCC of all monies for revenue received or to be received in relation to the Brayton Point property; and

iv. Grant such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

SCC hereby demands a trial by jury on all claims so triable.

Respectfully Submitted,

SMITH, COSTELLO & CRAWFORD
By its attorneys,

Howard M. Cooper (BBO# 543842)
hcooper@toddweld.com
Todd & Weld, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

Date: August 7, 2019

8

# Exhibit A

PO #7102
$5,000 monthly

February 5, 2018

Brayton Point, LLC
1650 Des Peres Road, Suite 303
Saint Louis, MO  63131

RE: Retainer Letter

1.    Scope of Representation.

The purpose of this letter is to confirm the terms and conditions under which Smith, Costello & Crawford (the "Firm," "we," "us," and "our") will provide strategic consultation services and government affairs representation to Brayton Point, LLC (BP LLC) ("the client"). The firm agrees to work to represent BP LLC to provide such services as necessary or necessary to insure the successful redevelopment and ultimately the resale or lease of Brayton Point. Our services and representation may include but shall not be limited to: (1) making introductions to and cultivating relationship building and management of key Massachusetts policy and legislative leaders; (2) providing strategic consultation services supporting the Client's business development; (3) promoting the Client's brand in providing high-value services to the Commonwealth, including strengthening and leveraging key relationships with the Commonwealth's business community, with a particular focus on businesses which may desire to locate in the South Coast area, including businesses focused on energy, storage and offshore wind; (4) participating in and representing the Client at meetings and hearings; (5) monitoring and reviewing Massachusetts legislation, regulation, policies, and other actions proposed by governmental bodies for potential impact on the Client's interests in Massachusetts and advising the Client regarding the same; (7) advising and assisting the Client to pass or defeat regulation, legislation, or other proposed action by governmental bodies; and, (8) carrying out other activities related to advancing the interests of the Client in Massachusetts.

2.    Staffing.

Jim Smith, Mike Costello and Carlo Basile will be primarily responsible for this engagement, although other members of the firm may become involved.

3.    Fees and Term.

Our fees will be payable in advance monthly, on the first day of each month, at the rate of Ten ~~Five~~ Thousand Dollars ($~~10~~5,000.00) per month, beginning at February 1, 2018. Additionally, Firm will receive one percent (1%) of sales or leases or other revenues received on the Property up to a cap of $300,000.

4.      **Costs and Disbursements.**

It is anticipated that there will be no travel costs or extraordinary disbursements costs in this engagement. It is policy of the Firm not to charge its clients separately for postage, telephone calls, facsimile transmissions, computerized research, and staff overtime. It is also the Firm's policy not to bill its clients separately for ordinary photocopying expenses. However, any registration or lobbying fees that may be required for this engagement will be billed to the Client at the Firm's actual cost and any travel required will be billed to the Client, but only if said travel is authorized in advance by the Client.

5.      **Independent Activities.**

The Client understands and acknowledges that the Firm has preexisting and executed contracts with other entities. Nothing in this Agreement shall preclude the Firm from pursuing other business activities, so long as such activities do not 1) conflict or interfere with its obligation hereunder; or, 2) violate any terms of this Agreement. Nothing in this Agreement shall grant the Client or the Firm any exclusive relationship.

6.      **E-mail Communication.**

During the course of representing you, we may from time to time, when appropriate, communicate with you by e-mail. We advise you that: (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from us to you or vice versa (3) a person not participating in our communication may intercept our communications by improperly accessing your computer or our computer or even another computer nuconnected to either of us through which email passes. Your execution of this letter below will reflect your consent to receiving communications from us via e-mail. If, at some time during our representation, you change your mind and would prefer that we not communicate via e-mail, please let us know immediately.

7.      **Understandings.**

You understand and acknowledge that we cannot make and have not made any guarantees regarding the outcome of any matter.

**8.    Disclosure.**

The Client hereby consents to the Firm's public disclosure of the fact that s/he is a Client of the Firm. The Firm will maintain the confidentiality of all other information concerning the Client.

If the foregoing correctly reflects your understanding of the terms and conditions of our representation, please indicate your consent to agreements and disclosures in this letter by executing the enclosed copy of this letter in the space provided below and return it to our office. A facsimile copy shall be deemed to be acceptable as an original and each party may sign a separate counterpart of this letter. We are pleased to have this opportunity to be of service and to work with you.

Smith, Costello & Crawford

James E. Smith, Partner

## AGREEMENT AND ACCEPTANCE

The undersigned hereby acknowledges and agrees that he has reviewed and understands the terms of this letter, agrees to be bound by them, and represents that he has authority to execute this agreement and acceptance on behalf of Brayton Point LLC.

By:

Michael J. Roberts

Its:    Managing Member

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): Smith, Costello & Crawford | COUNTY<br>Suffolk |
|---|---|

PLAINTIFF(S): Smith, Costello & Crawford
ADDRESS: 50 Congress Street
Suite 420
Boston, MA 02109

DEFENDANT(S): Brayton Point, LLC
1515 Des Peres Road, Suite 360
St. Louis, MO 63131

ATTORNEY: Howard M. Cooper, Esq.
ADDRESS: Todd & Weld LLP
One Federal Street, Flr. 27
Boston, MA 02110

ADDRESS: c/o CT Corporation System (Resident Agent)
155 Federal Street, Suite 700
Boston, MA 02110

BBO: 543842

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

CODE NO. A01
TYPE OF ACTION (specify): Breach of Contract
TRACK: F
HAS A JURY CLAIM BEEN MADE? ☒ YES ☐ NO

"If "Other" please describe:

Is there a claim under G.L. c. 93A? ☐ YES ☒ NO
Is this a class action under Mass. R. Civ. P. 23? ☐ YES ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ... $ N/A
2. Total doctor expenses ... $
3. Total chiropractic expenses ... $
4. Total physical therapy expenses ... $
5. Total other expenses (describe below) ... $
Subtotal (A): $

B. Documented lost wages and compensation to date ... $ N/A
C. Documented property damages to date ... $
D. Reasonably anticipated future medical and hospital expenses ... $
E. Reasonably anticipated lost wages ... $
F. Other documented items of damages (describe below) ... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
This is a breach of contract, Chapter 93A lawsuit seeking damages in excess of $330,000, trebled, plus attorneys' fees and costs.
TOTAL (A-F):$ N/A

**CONTRACT CLAIMS**
(attach additional sheets as necessary)
☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):
TOTAL: $ 330,000, plus

Signature of Attorney/ Unrepresented Plaintiff: X          Date:

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**
I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X          Date: August 7, 2019

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc.   (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc.   (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc., (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc.   (A)
AE1 Administrative Action involving Commonwealth, Municipality, etc.  (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials   (F)
A02 Goods Sold and Delivered   (F)
A03 Commercial Paper   (F)
A04 Employment Contract   (F)
A05 Consumer Revolving Credit - M.G.P. 9.1   (F)
A06 Insurance Contract   (F)
A08 Sale or Lease of Real Estate   (F)
A12 Construction Dispute   (A)
A14 Interpleader   (F)
BA1 Governance, Conduct, Internal Affairs of Entities   (A)
BA3 Liability of Shareholders. Directors, Officers, Partners, etc.   (A)
BB1 Shareholder Derivative   (A)
BB2 Securities Transactions   (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc.  (A)
BD1 Intellectual Property   (A)
BD2 Proprietary Information or Trade Secrets   (A)
BG1 Financial Institutions/Funds   (A)
BH1 Violation of Antitrust or Trade Regulation Laws   (A)
A99 Other Contract/Business Action - Specify (F)

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract   (A)
D02 Reach and Apply   (F)
D03 Injunction   (F)
D04 Reform/ Cancel Instrument   (F)
D05 Equitable Replevin   (F)
D06 Contribution or Indemnification   (F)
D07 Imposition of a Trust   (A)
D08 Minority Shareholder's Suit   (A)
D09 Interference in Contractual Relationship   (F)
D10 Accounting   (A)
D11 Enforcement of Restrictive Covenant   (F)
D12 Dissolution of a Partnership   (F)
D13 Declaratory Judgment, G.L. c. 231A   (F)
D14 Dissolution of a Corporation   (F)
D99 Other Equity Action   (F)

### PA Civil Actions Involving Incarcerated Party †

PA1 Contract Action involving an Incarcerated Party   (A)
PB1 Tortious Action involving an Incarcerated Party   (A)
PC1 Real Property Action involving an Incarcerated Party   (F)
PD1 Equity Action involving an Incarcerated Party   (F)
PE1 Administrative Action involving an Incarcerated Party   (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal Injury/Property Damage   (F)
B04 Other Negligence - Personal Injury/Property Damage   (F)
B05 Products Liability   (A)
B06 Malpractice - Medical   (A)
B07 Malpractice - Other   (A)
B08 Wrongful Death - Non-medical   (A)
B15 Defamation   (A)
B19 Asbestos   (A)
B20 Personal Injury - Slip & Fall   (F)
B21 Environmental   (F)
B22 Employment Discrimination   (A)
BE1 Fraud, Business Torts, etc.   (A)
B99 Other Tortious Action   (F)

### RP Real Property

C01 Land Taking   (F)
C02 Zoning Appeal, G.L. c. 40A   (F)
C03 Dispute Concerning Title   (F)
C04 Foreclosure of a Mortgage   (X)
C05 Condominium Lien & Charges   (X)
C99 Other Real Property Action   (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding   (X)
E97 Prisoner Habeas Corpus   (X)
E22 Lottery Assignment, G.L. c. 10, § 28   (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A   (X)
E21 Protection from Harassment, G.L. c. 258E (X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency, G.L. c. 30A   (X)
E03 Certiorari Action, G.L. c. 249, § 4   (X)
E05 Confirmation of Arbitration Awards   (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9   (X)
E07 Mass Antitrust Act, G.L. c. 93, § 8   (X)
E08 Appointment of a Receiver   (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A   (A)
E10 Summary Process Appeal   (X)
E11 Worker's Compensation   (X)
E16 Auto Surcharge Appeal   (X)
E17 Civil Rights Act, G.L. c.12, § 11H   (X)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b)   (X)
E25 Pleural Registry (Asbestos cases)   (X)
E94 Forfeiture, G.L. c. 265, § 56   (X)
E95 Forfeiture, G.L. c. 94C, § 47   (F)
E99 Other Administrative Action   (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B   (F)
Z02 Appeal Bond Denial   (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12   (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)   (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 178M   (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

### BP Summary Process (Real Property)

S01 Summary Process - Residential   (X)
S02 Summary Process - Commercial/ Non-residential   (F)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

### A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                SUPERIOR COURT DEPARTMENT
                                            OF THE TRIAL COURT

SMITH, COSTELLO & CRAWFORD         )
                                   )
              Plaintiff,           )
                                   )
v.                                 )        C.A. No.
                                   )
BRAYTON POINT LLC                  )
                                   )
              Defendant.           )

## MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, Plaintiff, Smith,

Costello & Crawford, moves that the Court appoint Jon Pollack & Associates, Process Servers, a

disinterested party and of legal age, as special process server for the purpose of serving of the

Pleadings in this action.

                              Respectfully submitted,

                              SMITH, COSTELLO & CRAWFORD
                              By its attorneys,


                              Howard M. Cooper (BBO# 543842)
                              hcooper@toddweld.com
                              Todd & Weld, LLP
                              One Federal Street, 27th Floor
                              Boston, MA 02110
                              (617) 720-2626

Date: August 7, 2019

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1984CV02517 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Smith Costello & Crawford vs. Brayton Point LLC | |
|---|---|
| TO: | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                          DEADLINE

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/05/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 12/05/2019 | |
| All motions under MRCP 12, 19, and 20 | 12/05/2019 | 01/06/2020 | 02/03/2020 |
| All motions under MRCP 15 | 12/05/2019 | 01/06/2020 | 02/03/2020 |
| All discovery requests and depositions served and non-expert depositions completed | 08/02/2020 | | |
| All motions under MRCP 56 | 07/02/2020 | 08/03/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/30/2020 |
| Case shall be resolved and judgment shall issue by | | | 08/06/2021 |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time. Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED 08/07/2019 | ASSISTANT CLERK Jane M Mahon | PHONE (617)788-8110 |
|---|---|---|